UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SAMIRA HAZAMA and | ) | |
| AHMED ABDEL HAFIZ GHNEIM, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 16 C 7106 |
| | ) | |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| RON ROSENBERG, et al, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ahmed Abdel Hafiz Ghneim ("Ghneim") and his wife Samira Hazama ("Hazama") filed suit here after the United States Citizenship and Immigration Services ("USCIS") denied Ghneim's request to waive certain inadmissibility grounds. Defendants move to dismiss. For the reasons set forth below, the Court grants the motion.

**I.  BACKGROUND**

The Court takes as true the allegations in plaintiffs' amended complaint. In considering a motion to dismiss, a court may not consider matters outside the pleadings without converting the motion to a motion for summary judgment. Fed.R.Civ.P. 12(d). The pleadings include documents attached to the complaint. Fed.R.Civ.P. 10(c). The pleadings also include documents attached to a motion to dismiss if the plaintiffs referred to those documents in the complaint and if the documents are central to the plaintiffs' claims. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("In effect, the incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment. The doctrine prevents a plaintiff 'from evad[ing] dismissal under Rule

12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit.'") (citations omitted). In this case, defendants attached to the motion to dismiss three documents that plaintiffs reference in their complaint and that are central to plaintiffs' claims: (1) USCIS's March 23, 2015 decision denying Ghneim's I-601 Application for Waiver of Admissibility [docket 30-1]; (2) USCIS's March 23, 2015 decision denying Ghneim's I-212 Application for Permission to Reapply for Admission into the United States after Deportation and Removal [docket 30-2]; and (3) USCIS's June 8, 2016 Administrative Appeals Office's decision denying Ghneim's appeal [docket 30-3]. The Court can and will consider these documents without converting this motion to a motion for summary judgment.

According to plaintiffs' allegations, plaintiff Ghneim, who is not a citizen of this country, first entered the United States in April 2000. By June 2002, Ghneim was ordered removed, and his appeal of that order was denied in October 2003. Nonetheless, Ghneim was arrested in the fall of 2003 for selling counterfeit compact discs. By the end of November, he had pled guilty to that misdemeanor offense. In March 2004, Ghneim married plaintiff Hazama, who is a citizen of the United States. Ghneim and Hazama had two children before Ghneim was removed from the United States in June 2007 and one more after.

The events leading to this case began in March 2010, when Hazama filed with the USCIS an I-130 petition for an alien relative. The petition was approved in August 2011. Ghneim paid the filing fee in September 2012, received an interview notice in December 2012 and interviewed with the United States Consulate in Jerusalem (the "Consulate") in January 2013. The Consulate concluded that Ghneim was inadmissible but informed Ghneim that he could apply for a waiver of inadmissibility. In March 2013, Ghneim filed with the Consulate an I-212 (Application for Permission to Apply for Readmission to the United States after Deportation or

Removal) and an I-601 (Application for Waiver of Grounds of Inadmissibility). In January 2015, the Consulate rejected Ghneim's applications. The Consulate concluded that Ghneim was inadmissible under the Immigration and Nationality Act § 212(a)(3)(i) for "committing a terrorist act."

After the Consulate denied the request for waivers, plaintiffs filed suit at the Northern District of Illinois. In that case (which was separate from this case), plaintiffs sought a writ of mandamus and also alleged that plaintiff Hazama, pursuant to the Fifth Amendment to the Constitution, had a due process interest in a fair and impartial adjudication of Ghneim's immigrant status. [Case 15-cv-04002, Docket 1 at 10]. Judge Shadur dismissed the case, and the plaintiffs appealed. On appeal, the Seventh Circuit affirmed the dismissal on the merits, given the general rule that consular decisions are non-reviewable and that plaintiffs' case did not fit an exception. *Hazama v. Tillerson*, 851 F.3d 706 (7th Cir. 2017). The Seventh Circuit explained, among other things:

> In general, courts have no authority to second-guess the Executive's decisions—rulings that are typically made by consular officers of the Department of State.
>
> That said, the Court had never entirely slammed the door shut on review of consular decisions on visas. The language of [*Kleindienst v.*] *Mandel* suggests at least two possible exceptions to the general norm of nonreviewability: 'We hold that when the Executive exercises [the power to admit] negatively on the basis of a *facially legitimate* and *bona fide* reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant.' 408 U.S. [753,] 770 [(1972)] (emphasis added). In addition, as the final allusion to the First Amendment implies, some courts have held that if a visa denial affects the constitutional rights of American citizens, then it may be reviewable.
>
> Like the concurring Justices in [*Kerry v.*] *Din*, [135 S.Ct. 2128 (2015),] we can assume for the sake of argument that Hazama has enough of an interest in the grant of a visa to her husband that this case can go forward. Yet that assumption does nothing to meet her greater challenge, which is to show that the consular decision was not facially legitimate and bona fide. . . .

> Finally, even if we were to find that Hazama was entitled to a reasoned explanation of the denial, she would still be out of luck. Ghneim, and so we assume Hazama, received a full explanation in a signed letter of a page and a half. The letter laid out all the grounds for refusal, explained why they applied, cited relevant precedent, and explained the agency review process. That was more than enough.

*Hazama*, 851 F.3d at 708-711 (citations omitted).

In the meantime, Ghneim asked the USCIS for the same relief he had requested from the Consulate. Specifically, Ghneim filed an I-212 and an I-601 with the USCIS. USCIS denied both on March 23, 2015. In its denial of Ghneim's I-601 Application for Waiver of Grounds of Inadmissibility, the USCIS stated, among other things:

> Unfortunately, after thorough review, USCIS must inform you that we are denying your application as explained below.
>
> Our records show the following information regarding your status in the United States. You entered the United States without inspection in the year 2000 and remained without status until June of 2007. You were ordered deported in 2001 for entering without inspection but you did not exit. In 2007 you were arrested for not having a work permit. You were deported in 2007. Therefore you are inadmissible under 212(a)(9)(B)(i)(II) for having more than one year of unlawful presence in the United States.
>
> Our records show that on September 19, 2001 you were arrested for battery and bodily harm. The bodily harm charge appears to have been dismissed 'nolle prosequi'. You were arrested on September 2, 2003 for counterfeiting. . . . You were convicted by the Court of Cook County Illinois for violation of copyright and trademarks/counterfeiting on November 20, 2003[.]
>
> The offense of violation of copyright and trademarks/counterfeiting is a crime involving moral turpitude and is not a purely political offense. Therefore, you are inadmissible to the United States. *See* INA § 212(a)(2)(A)(i)(I).
>
> In addition to the inadmissibility grounds identified above, you are inadmissible under INA 212(A)(9)(II) for having been removed or departed while a removal order was outstanding due to your deportation in 2007.
>
> In addition to the inadmissibility ground identified above, you are inadmissible under INA 212(a)(3)(B)(i)(I) terrorist activities. On January 22, 2015 the

> Department of State Consulate found you inadmissible for the individual act of stoning Israeli soldiers and Israeli settlers.
>
> There is no waiver for inadmissibility under INA 212(a)(3)(B)(i)(I).
>
> If an applicant would remain inadmissible even if a waiver is granted, that remaining inadmissibility may itself support denial of the waiver application as a matter of discretion. *See Matter of J- F- D-*, 10 I&N Dec. 694 (INS 1963).
>
> Therefore, USCIS denies your application as a matter of discretion since there is no waiver for inadmissibility under INA 212 (a)(3)(B)(i)(I).

[Docket 30-1].

Ghneim appealed. After seeking additional information from Ghneim, the Administrative Appeals Office (AAO) issued a seven-page, single-spaced decision dismissing the appeal, because Ghneim had not shown that he was eligible for a waiver of inadmissibility. In its decision, the AAO stated, among other things:

> The Applicant . . . seeks a waiver of grounds of inadmissibility for unlawful presence and a crime involving moral turpitude. . . . U.S. Citizenship and Immigration Services (USCIS) may grant this discretionary waiver if refusal of admission would result in extreme hardship to a qualifying relative or qualifying relatives.
>
> The U.S. Consular office found the Applicant was inadmissible for having been: 1) unlawfully present in the United States for more than 1 year and seeking readmission within 10 years of his last departure; 2) convicted of a counterfeiting/trademark infringement offense, a crime involving moral turpitude; 3) ordered removed and seeking admission within 10 years of the date of his removal from the United States; and 4) for engaging in terrorist activities. . . .
>
> The Director, Nebraska Service Center denied [plaintiff's application for waiver]. . . . Because the Applicant would remain inadmissible even if waivers were granted for his remaining grounds of inadmissibility, the application was denied in the exercise of discretion.
>
> The matter is now before us on appeal. In the appeal, the Applicant asserts that he is not inadmissible under section 212(a)(3)(B)(i)(I) of the Act for engaging in terrorist activities. . . .
>
> . . . We informed the Applicant, however, in a notice of intent to dismiss (NOID) letter . . . that evidence in the record demonstrated that he stated on his asylum

5

application, during his immigration court proceedings, and on appeal to the Board of Immigration Appeals, that he took part in violent demonstrations in the West Bank and intentionally stoned Israeli soldiers during the demonstrations. The Applicant responded to our NOID . . . that his previous attorney forced him to make untrue statements on his asylum application and during his immigration court proceedings. . . .

. . . We will . . . adjudicate the Applicant's appeal based on the evidence in the record.

The record includes documentation related to the Applicant's asylum application; declarations from the Applicant, his family, and friends; medical and school records; country conditions information; and documents pertaining to relationships, identity and immigration status.

\* \* \*

The record reflects that the Applicant stated on his asylum application and during immigration court and appeal proceedings, that he was involved in violent demonstrations against the Israeli occupation of the West Bank, and that he stoned Israeli soldiers when he saw Israeli patrols. Specifically the Applicant stated, under penalty of perjury . . . that in the summer of 1994 he became involved in the Palestinian Intifada Movement; he organized and led demonstrations opposing Israeli occupation, which turned violent; and whenever he saw Israeli military patrols, he stoned Israeli soldiers. . . . The Applicant stated further on his asylum application that in 1995 he again became active in the Palestinian Intifada Movement and stoned patrolling Israeli military forces, and that he was arrested, interrogated, beaten and released. . . . A review of immigration court proceeding evidence contained in the record reflects that the Applicant reiterated these claims, under oath, before an immigration judge. The record reflects further that the Applicant repeated the claims on appeal to the Board of Immigration Appeals (the Board) in June 2002.

As stated above, the term 'terrorist activity' refers to an activity which is unlawful under the laws of the place where it was committed, or which would be unlawful under the laws in the United States, and which involves, amongst other things, the use of any weapon or dangerous device with intent to endanger, directly or indirectly, the safety of another individual. *See* section 212(a)[(]3)(B)(iii) of the Act. The statements made by the Applicant, on his asylum application, during immigration proceedings, and on appeal to the Board reflect that the Applicant admitted he took part in violent demonstrations, and that he intentionally stoned Israeli soldiers. The described activity was unlawful and could cause serious bodily injury and endanger the soldiers' safety. The activity therefore falls within the definition of a 'terrorist activity', as set forth in section 212(a)(3)(B)(iii) of the Act.

\* \* \*

. . . Although the Applicant asserts generally that he was young and did not understand what was going on when he filed his asylum application and during

> immigration court and appeal proceedings, the record reflects that the Applicant was an adult, over the age of 21, when he filed his asylum application. The record reflects further that the Applicant signed his asylum application under penalty of perjury, and that his immigration court testimony was made under oath before an immigration judge. The Applicant provides no detailed information to explain why he did not understand the claims that he made on his asylum application and during his immigration court proceedings, and we find the Applicant did not demonstrate that he made the statements unknowingly, or that the statements were made out of fear or under duress.

[Docket 30-3].

Plaintiffs allege that the AAO's decision "is a final decision" that "should be reviewed by this Court." (Am. Complt. ¶ 44). Plaintiffs allege that the decision was a "mere adoption of the Consulate's reasoning, instead of adjudicating the Application on the merits, was done in bad faith, and was therefore not facially legitimate or bona fide." (Am. Complt. ¶ 49). Plaintiffs assert four causes of action. In Count I, they seek relief under the Administrative Procedures Act. In Count III, they seek a declaratory judgment. In Count IV, they seek costs under the Equal Access to Justice Act. In Count II, they assert a violation of Hazama's due process rights.

Defendants move to dismiss for lack of jurisdiction and for failure to state a claim.

## II. STANDARD ON A MOTION TO DISMISS

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible.

7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the plaintiff. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Iqbal*, 556 U.S. at 680 & 681 (2009) (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). The notice-pleading rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679.

On a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court may look outside the complaint allegations and "view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017) (quoting *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)).

### III. DISCUSSION

Under the Immigration and Naturalization Act ("INA"), this Court lacks jurisdiction to review certain decisions. For example, the INA states, "no court shall have jurisdiction to review—

> (i) any judgment regarding the granting of relief under section 1182(h) . . . , or
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be

in the discretion of the Attorney General or the Secretary of Homeland Security
. . .

8 U.S.C. § 1252(a)(2)(B)(i) &(ii). Section 1182(h) is the section that allows for waivers of inadmissibility, so this Court has no jurisdiction to review USCIS's decision with respect to Ghneim's request for a waiver of inadmissibility. 8 U.S.C. § 1252(a)(2)(B)(i); *Khan v. Mukasey*, 517 F.3d 513, 517-18 (7th Cir. 2008). To the extent plaintiffs are arguing that the Administrative Procedures Act ("APA") provides jurisdiction, the Court notes that the APA does not provide an independent grant of jurisdiction, *Califano v. Sanders*, 430 U.S. 99, 107 (1977), and does not give this Court jurisdiction to review decisions that a federal statute precludes it from reviewing. *See Dhakal v. Sessions*, 895 F.3d 532, 538 (7th Cir. 2018) ("Although the APA is not an independent grant of jurisdiction, where federal jurisdiction is not precluded by another statute, general federal question jurisdiction exists.").

Plaintiffs cite 8 U.S.C. § 1252(a)(2)(D) for the proposition that this Court can review "constitutional claims or questions of law." Plaintiffs misread the statute, which states:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of *constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section*.

8 U.S.C. § 1252(a)(2)(D) (emphasis added). The statute does not provide that all courts can review constitutional claims or questions of law. Instead, the statute allows review of constitutional claims and questions of law *only* when those issues are "raised upon a petition for review filed with an appropriate court of appeals[.]" 8 U.S.C. § 1252(a)(2)(D). This Court is not a court of appeals, so that section does not give this Court jurisdiction to review questions of law or constitutional claims.

9

Even if this Court were wrong about the meaning of that language and even if this Court had jurisdiction to consider constitutional claims such as plaintiffs' due process claim, plaintiffs still could not state such a claim. Note, first, that plaintiffs are not pursuing a claim for Ghneim's due process rights. He has none. A party asserting a claim for due process must have a liberty (or property) interest, and aliens have no liberty interest in "discretionary relief." *Khan v. Mukasey*, 517 F.3d at 518 ("[W]e have repeatedly held that 'an alien's right to due process does not extend to proceedings that provide only such discretionary relief' because an appeal to discretion is not a substantive entitlement.") (quoting *Cevilla v. Gonzales*, 446 F.3d 658, 662 (7th Cir. 2006)). Denials of waivers of inadmissibility are discretionary decisions. *Khan*, 517 F.3d at 517 (listing "denial of a waiver of inadmissibility" as an example of a "discretionary decision."); 8 U.S.C. § 1182(h) ("The Attorney General may, *in his discretion*, waive the application of [certain inadmissibility provisions]") (emphasis added). Thus, Ghneim has no liberty interest at stake.

Instead, plaintiffs assert a due process claim with respect to Hazama's asserted liberty interest in making "personal choices with regard to family matters in a manner free from unjustifiable government interference." (Am. Complt. ¶ 65). The first problem with such a claim is that Hazama does not have a recognized liberty interest in her spouse's visa. *See Kerry v. Din*, 135 S.Ct. 2128, 2136 (2015) ("Only by diluting the meaning of a fundamental liberty interest and jettisoning our established jurisprudence [i.e., long practice of regulating spousal immigration] could we conclude that the denial of [the spouse's] visa application implicates any of [plaintiff's] fundamental liberty interests.") (plurality opinion written by Scalia, J. and joined by Roberts, C.J. and Thomas, J); *Bourdon v. Sessions*, Case No. 17-cv-80207, 2017 WL 5187833 at *7 (S.D. Fla. Nov. 9, 2017) ("Plaintiff and his [alien] wife remain legally married and neither

10

the AWA nor USCIS's decision has prevented Plaintiff from exercising his right to marry. Because there is no recognized due process right implicated by USCIS's denial of [plaintiff's wife's] visa petition, Plaintiff has not stated a plausible claim that denial of his [petition] violates any constitutionally protected right."); *Abraham v. Lynch*, Case No. 16-cv-3502, 2016 WL 8786874 at *2 (E.D.N.Y. Dec. 15, 2016) ("The Second Circuit has found that 'no constitutional right of a citizen spouse is violated by deportation of his or her alien spouse.'") (quoting *Burrafato v. United States Dep't of State*, 523 F.2d 554, 555 (2d Cir. 1975)); *Jathoul v. Clinton*, 880 F. Supp.2d 168, 172 (D.C. D. 2012) ("While it may well be true that exclusion of her husband imposes burdens on their married life, the Court cannot find any constitutional violation.")

Even were the Court to assume such a liberty interest existed, plaintiff has received all the process she is due. Due process is "flexible and calls for such procedural protections as the particular situation demands." *Mathews. v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1961)); *see also Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 571 (7th Cir. 2017). Although plaintiff makes the conclusory allegation that USCIS acted in "bad faith" by "mere[ly]" accepting the decision of the Consulate, the AAO's decision (which is the final decision plaintiffs ask this Court to review) belies those conclusory allegations. The AAO's decision makes clear that USCIS did *not* simply accept the decision from the Consulate. Instead, the AAO took a number of steps to consider the merits of Ghneim's appeal. First, the AAO gave Ghneim a chance to respond to its notice of intent to dismiss. Next, the AAO considered evidence, such as the statements Ghneim made under oath in connection with his asylum application, as well declarations from Ghneim and his family and friends. The AAO considered Ghneim's argument that he was forced by his attorney to lie in connection with

his asylum application. The AAO also considered whether Ghneim's conduct met the definition of terrorist activity for purposes of the INA. Ultimately, the AAO issued a seven-page, single-spaced decision dismissing his appeal.

Hazama received all the process she was due even if she had a liberty interest in Ghneim's visa. Accordingly, even if the Court had jurisdiction, the case would be dismissed for failure to state a claim, and, because the defects would not be curable, the dismissal would be with prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court grants defendants' motion to dismiss [29]. This case is dismissed without prejudice for want of jurisdiction. Civil case terminated.

**SO ORDERED.**  **ENTERED:** August 13, 2018

**JORGE L. ALONSO**
**United States District Judge**